IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA ROBINSON, ET AL., | : | |
| Plaintiffs | : | No. 1:07-CV-1751 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| ERIK HICKS, ET AL., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Procedural Background

Pursuant to an Order entered on August 3, 2010 (Doc. 79), the Honorable Christopher C. Conner referred the Defendants' pending Motions for Summary Judgment to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiffs, Angela and Johnny Robinson, individually and as parents of minor Plaintiff J.R., commenced this action by filing a complaint on September 26, 2007 (Doc. 1) and thereafter filed an amended complaint on April 24, 2008. (Doc. 16). The amended complaint, filed pursuant to 42 U.S.C. §§ 1981 and 1983, alleges, *inter alia*, racial discrimination and due process claims in violation of the 1st and 14th Amendments. Named as Defendants are Central Pennsylvania Youth Soccer League ("CPYSL"); Sharon Bolognese, president of CPYSL; the City of

Harrisburg, Pennsylvania; Erik Hicks, an employee of the Department of Recreation for the City of Harrisburg and President of the Harrisburg Youth Soccer Association;[1] and Tina King, a supervisor for the Department of Parks and Recreation for the City of Harrisburg. Plaintiffs assert that a racial comment was made while the minor Plaintiff was a member of a youth soccer program and, following Plaintiffs' complaints about such comments, they were suspended from participation in the soccer program.

On March 22, 2010, Defendants Bolognese and CPYSL filed a Motion for Summary Judgment along with a Statement of Material Facts and a Brief in Support (Docs. 53-55). Plaintiffs filed an Answer to the Statement of Facts, Exhibit and Brief in Opposition on April 30, 2010 (Docs. 71-73), to which Defendants filed a Reply on May 13, 2010 (Doc. 75). Defendants Harrisburg, King and Hicks also filed a Motion for Summary Judgment together with a Statement of Material Facts, Brief in Support and Exhibits on March 22, 2010 (Docs. 56-59, 61). Plaintiffs filed an Answer to the Statement of Material Facts and a Brief in Opposition on April 30, 2010 (Docs. 68-69), to which Defendants

---

[1] This entity appears to be referenced as the Harrisburg Youth Soccer Association, Harrisburg Soccer Club, and Harrisburg Youth Soccer Club. Because all these names appear to reference only one entity, for purposes of clarity, the court will reference this group as the Harrisburg Soccer Club ("HSC").

filed a Reply on May 14, 2010  (Docs. 76).  The matter is now ripe for disposition.

For the reasons that follow, it will be recommended that the Defendants' Motions

for Summary Judgment be granted.

## II. Factual Background

The minor Plaintiff, J.R., is the natural child of Plaintiffs Angela Robinson,

who is Caucasian, and Johnny Robinson, who is African-American.  J.R played on

several soccer teams in the Harrisburg area, including a recreational team and a

travel team, the latter run by CPYSL, and an "in-house" team, a program affiliated

with the Eastern Pennsylvania Youth Soccer Association ("EPYSA").[2]  Hicks was

the club president for HSC and as such, coordinated and implemented the soccer

program.  Plaintiff Angela Robinson had contacted Hicks on several occasions in

the fall of 2006 and in the spring and summer of 2007 regarding certain

occurrences in the soccer program that she wanted to bring to his attention and/or

about which she wanted to express her opinion.  The calls became so frequent and

pertained to such trivial matters that Hicks told her not to contact him in the future

but instead to deal with the soccer coordinator, Patricia Flores, regarding future

problems she had.  (Doc. 67, Ex. 7, p. 68).

---

[2]  The City of Harrisburg, through the Harrisburg Soccer Club, ran a travel
soccer program associated with the CPYSL.  The in-house program of the HSC
was affiliated with the EPYSA.

At a team meeting held in advance of a game on April 11, 2007, Hicks stated to that the team: "[W]e're going to 'kick those white girls' butts.'"[3] This statement referred to members of the opposing team. Once Plaintiffs became aware of the statement made by Hicks, they contacted Bolognese, complaining of the inappropriateness of the comment.[4] Plaintiffs contend that their concerns regarding the unsuitability of the comment were not shared by the program directors and that the situation was not adequately addressed or remedied. Plaintiffs also allege that Hicks instructed the girls on his team not to relay statements made at practices to their parents.

In emails exchanged between the parties, Plaintiff Angela Robinson indicated to Defendant King that she did not approve of the coaching of Defendant Hicks and went on to recommend another individual for Hicks' position.[5] She also raised issues with another soccer player being taken to her boyfriend's house. Defendant King responded by telling Plaintiff that Hicks was hired with good

---

[3] It is alleged that J.R.'s team was comprised of minority players and few, if any, of Caucasian descent.

[4] Defendants Bolognese and CPYSL assert that the comment by Hicks arose as part of another program and, consequently, does not involve them.

[5] Throughout the pleadings, the parties refer to him as Coach Hicks. He was not, in fact, a coach for the league.

4

references and that she should mind her own business and refrain from spreading gossip concerning other players.  In another email, Plaintiff revisited her position to replace Hicks and accuses him of making and breaking promises to his assistant and to the players.  Plaintiff Angela Robinson sent Defendant King yet another email raising issue with Hicks not permitting two members of the soccer team to participate in picture night.  Given their numerous complaints with the league, Defendant King suggested that Plaintiffs may be happier in another soccer program.  When asked again by Plaintiff about replacing Hicks, King advised that Hicks would retain his position.

Plaintiff Angela Robinson was also in frequent contact with Defendant Bolognese to express her views about the soccer program.  In April, 2007, Plaintiff emailed Bolognese not only to object to the comment made by Hicks but also to suggest a replacement for him.  Other exchanges between Angela Robinson and Bolognese discuss King's suggestion that Plaintiffs look for another league in which to play and whether Plaintiffs could be barred from the league because their expressed opinions about Hicks.

Subsequently, on August 10, 2007, the Plaintiffs were suspended from

participation in the HSC program. (Doc. 57, Ex. J).[6][7]  Defendants assert that the suspension was the culmination of several incidents of unacceptable behavior by Plaintiffs Angela and Johnny Robinson, which included, *inter alia*, program violations including the use of profanity towards staff and children and calling one coach and the coach's daughter "whores."

After the Plaintiffs were suspended in August, 2007, Plaintiff Angela Robinson sought information from Defendant Bolognese about how to appeal the decision, to which Bolognese responded that Plaintiffs should file a letter of appeal. At that time, Bolognese further advised Plaintiff that she would no longer be able be involved inasmuch as she could have to hear the appeal. Despite this, Angela Robinson continued to email Bolognese about the impact of the suspension and further appeal procedures. Bolognese informed Plaintiffs to file

---

[6] Plaintiff Angela Robinson had previously been banned from attendance at, or communication with, the programs run by HSC on April 12, 2007 based on her verbal altercations with staff and verbal harassment of players. Plaintiff Angela Robinson continued attending activities and communicating with those in the program, despite having been barred from doing so. She also demanded that one of the coaches communicate with her and, as noted above, sought to have Hicks replaced. (Doc. 68, Ex. 9, p. 78).

[7] CPYSL further states that the local affiliations of its program, such as HSC, determine who is eligible or permitted to play. (Doc. 54, ¶10). Although Plaintiffs dispute this fact, they have not supported their position with any evidence of record. (Doc. 71, ¶ 10).

their appeal with the director of the EPYSA, providing an email address for them to contact as well as an estimate of the cost of the appeal.

Plaintiffs filed an appeal of their suspension. (Doc. 57, Ex. K). At a hearing on their appeal of the suspension, at which time Plaintiffs were allowed to present evidence in their favor, the panel voted to uphold the one-year suspension. However, Plaintiffs' behavior at this hearing became so threatening and aggressive that they were asked to leave. As a result of this conduct, Plaintiffs' suspension from the program was increased from one year to two years. (Doc. 57, Ex. L). The minutes of the HSC hearing regarding Plaintiffs' appeal of the suspension referenced the following incidents with Plaintiffs:

> September 06--Mrs. Robinson called club registrar/coordinator (Patricia Flores) and told her she had an older daughter that would take care of anyone on the team who wanted to start fights with her daughter.
>
> September 06–Mrs. Robinson called soccer participant Crystal Dykes a bitch[.]
>
> September 06–Mr. Robinson told soccer participant (Crystal Dykes) she was too fat to play soccer.
>
> September 06–Mr. Robinson told a soccer participant (Beryl Bannerman) that it was her fault her team had lost the game, at which point Beryl became upset and started crying.
>
> October 06–Mrs. Robinson called club President and accused him of talking about her daughter Johnae, at that point Mrs. Robinson was

told to refer all problems to club coordinator.

March 07–Mrs. Robinson accused coaches Neraida Benitez and Coreen Bullock of making sexual gestures in front of a van load of kids.[]

April 07– Mrs. Robinson accuses club president of being a racist[.]

April 07– Mrs. Robinson approached coach Benitez and told her she will listen to her and change her attitude (this incident occurred after Bureau Director ordered Mrs. Robinson to stay away from practices, and verbal communication from all Parks and Rec. staff, including coaches).

April 07–Mrs. Robinson called coach Benitez's home and stated her daughter Jacklyn was a whore, and that she is going to become pregnant soon if she didn't do something to control her.

July 07–Mr. Robinson called Club President and accused him of telling Kalina Jenkins, Andrea Rodrigues and Asia Bullock not to socialize with his daughter.

July 07– Mrs. Robinson called the home of Andrea Rodrigues and told her that they were going to press charges on her for trying to drown her daughter at a soccer camp they attended at Lebanon Valley College.

(Doc. 57, Ex. L).

Plaintiffs filed an appeal of this decision to the EPYSA which, on December 11, 2007, unanimously agreed to uphold the two year suspension. (Doc. 57, Ex. M).[8] Plaintiffs did not avail themselves of an appeal to the United States Soccer

---

[8] The appeal decision notes that the suspension would not prevent J.R. from playing soccer inasmuch as HSC agreed to fund J.R.'s registration fees with a

Federation.  The present action followed.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

---

neighboring soccer club so that her soccer development would not be hampered.

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." <u>Celotex</u>, 477 U.S. at 323. *See* <u>Harter v. G.A.F. Corp.</u>, 967 F.2d 846, 851 (3d Cir. 1992).

## IV. Discussion

### *(A) First Amendment*

To state a claim for actionable retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006). The Supreme Court has noted that "[p]rivate citizens cannot be punished for speech of merely private concern." <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 95 (1990) (citing <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983)). Moreover, speech regarding matters of public concern is accorded more protection than that involving only private matters. <u>Eichenlaub v. Township of Ind.</u>, 385 F.3d 274, 284 (3d Cir.2004) (holding that while "speech on topics of public concern may stand on the 'highest rung' on the ladder of the First Amendment, private speech ... is still protected."). Private citizens cannot be punished for speech regarding matters of public concern. Racial remarks are considered matters of public concern. <u>Givhan v. Western Line Consolidated School District</u>, 439 U.S. 410

(1979); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195 (3d Cir.1988).  *See* <u>Connick</u>, 461 U.S. at 148 n. 8.

The first prong of the First Amendment retaliation test presents questions of law for the court.  Under the first prong of a claim of retaliation under the First Amendment, Plaintiffs have established that by objecting to Hicks' comment, they engaged in constitutionally-protected conduct.  The comment has the potential to be interpreted as a racial remark and is thus a matter of public concern.

Although the second and third prongs "present questions of fact for the jury, only genuine questions of fact should be determined by the jury." <u>Hill v. City of Scranton</u>, 411 F.3d 118 (3d Cir 2005).  Accordingly, summary judgment is available in cases where there exists no material fact as to whether the retaliatory action is sufficient to deter a person of ordinary firmness from exercising his constitutional rights and whether there exists a causal link between the constitutionally protected conduct and the retaliatory action.  <u>Id.</u>

Plaintiffs allege that the exercise of their First Amendment rights motivated the Defendants to retaliate against them by suspending them from the soccer program.  Plaintiffs' complaint regarding the comment made by Hicks was addressed to the City of Harrisburg at the attention of King in April, 2007.  The suspension was imposed in August, 2007 by the HSC, of which Hicks is the

president.[9]

In the present case, the Plaintiffs have established sufficient facts to meet the second prong inasmuch as they have established that J.R. played on numerous soccer teams in and around the Harrisburg area. A two-year suspension from her participation in some of these programs is not insignificant. If motivated in any way by retaliation for their objections to Hicks' comment, the suspension could, conceivably, deter persons from the exercise of their free speech rights. Consequently, without finding that the suspension was retaliatory, the court concludes there is a material question of fact as to whether the alleged retaliatory action is sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

As to the third prong, Plaintiffs have also established facts to allow a fact-finder to conclude that there is a causal connection between their objection to Hicks' comment and their suspension from the program. The four (4) month time lapse between Plaintiff protesting the comment by Hicks in April, 2007 and their suspension from the program in August, 2007 is not too long or attenuated to dismiss a correlation between the two. If, as Plaintiffs suggest, the suspension was motivated by the exercise of their First Amendment rights, it presents a question of

---

[9] As president of the HSC, Hicks' role in the suspension is unclear.

fact to be determined by the trier of fact. Such a factual determination is incapable of resolution at the summary judgment stage.

However, Plaintiffs have not demonstrated that CPYSL or Bolognese played a role in the decision to suspend them. The determination was made by the HSC, and upheld on appeal by the EPYSA. Consequently, they have not demonstrated the personal involvement of these Defendants in any retaliatory action. Accordingly, summary judgement on Plaintiffs' First Amendment claim should be granted as to Bolognese and CPYSL and be denied with respect to the Hicks, King and the City of Harrisburg.[10]

### (B) Section 1983 Claim

Plaintiffs also assert a claim pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 imposes civil liability upon any person who, under color of state

---

[10] Nonetheless, as is discussed below, the application of qualified immunity to these claims shields the Harrisburg Defendants from liability for any First Amendment retaliation claim.

14

law, deprives someone of the rights, privileges, or immunities secured by the

federal Constitution or the laws of the United States. <u>Gruenke v. Seip</u>, 225 F.3d

290, 298 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights,

but merely provides a method for vindicating federal rights elsewhere conferred."

<u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

The Plaintiffs assert section 1983 violations against the City of Harrisburg,

Hicks and King.[11] "A public entity . . . may be held liable for the violation of a

constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional

action executes or implements policy or a decision officially adopted or

promulgated by those whose acts may fairly be said to represent official policy."

<u>Reitz v. Bucks County</u>, 125 F.3d 139, 144 (3d Cir. 1997) (citing <u>Monell v. New</u>

<u>York City Dep't of Social Svcs.</u>, 436 U.S. 658, 690-91 (1978)). "A policy is an

---

[11] It does not appear that Plaintiffs have stated a cause of action under §1983 with respect to Defendants Bolognese and CPYSL and, to the extent they attempt to state such a claim, the Plaintiffs have not established that these Defendants are state actors for purposes of establishing liability under §1983. *See* <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996) (To establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law."). Nor have Plaintiffs put forth any evidence demonsstrating that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009) (quoting <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005).

official proclamation or edict of a municipality, while a custom is a practice that is 'so permanent and well-settled as to virtually constitute law.'" Crouse v. South Lebanon Twp., 668 F. Supp. 2d 664, 675 (M.D. Pa. 2009) (Conner, J.) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting, in turn, Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). However, "[a] custom need not be 'formally approved by an appropriate decision-maker,' but must be 'so widespread as to have the force of law.'" Id. at 675-76 (quoting Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting, in turn, Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997)).

Plaintiffs contend that there is "a permanent and well-settled practice of supporting youth sports directors and program goals of fomenting racial division." (Doc. 69, p. 22-23). They have not, however, demonstrated a widespread racial animus in the operation or management of the soccer program or that it is well-settled that suspension will be imposed for those who speak out against the program. In fact, Plaintiffs' claim on this issue is wholly conclusory. Consequently, summary judgment in favor of the Defendants is appropriate on Plaintiffs claim under §1983.

*(C) Section 1981*

The Robinsons further maintain that they had a contract with the soccer club, created by writing a check for dues in August, 2007. Plaintiffs allege that they were discriminated against because the family is of mixed race and that but for their racial composition, they would not have been discriminated against by being suspended from the soccer program. Defendants Bolognese and CPYSL aver that the comment made by Hicks was not in conjunction with the CPYSL program but instead with the EPYSA team. Moreover, the check purporting to create the contract between the parties was written on August 7, 2007 to the Harrisburg Youth Soccer Club ("HYSC"), which is affiliated with the CPYSL, for J.R.'s participation on a travel team in the CPYSL fall program. Plaintiffs were suspended from the HSC on August 10, 2007, a mere three days after the check was written. It was subsequently refunded.

Section 1981 provides, in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981(a). Among other things, the statute protects the right of all individuals to make and enforce contracts. Id. It creates a cause of action against all individuals who engage in discriminatory acts within its scope. State action is not required to properly state a claim under §1981. 42 U.S.C. §1981(c). To state a §1981 claim, a plaintiff must generally demonstrate: "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir.2002); Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001).

"'[D]irect evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged ... action was motivated at least in part by prejudice against members of the protected group.'" Arnold v. Marous Bros. Const., Inc., 211 Fed .Appx. 377, 380 (6th Cir. 2006) (quoting Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003)). "It is well established that isolated and ambiguous comments are not sufficient to make out a direct-evidence case of ... discrimination." Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 382 (6th Cir.2002) (citing Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025 (6th Cir.1993)). "In a direct evidence case, the plaintiff must

produce direct testimony that the [defendant] acted with discriminatory motive, and must convince the trier of fact to accept the testimony." E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 923 (11th Cir.1990) (citing Lee v. Russell County Bd. of Educ., 684 F.2d 769, 774 (11th Cir.1982)). "[D]irect evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested ... decision.'" Bickford v. Denmark Technical College, 479 F. Supp.2d 551, 564 (D.S.C.2007) (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir.1995) (abrogated on other grounds)). To constitute direct evidence, a comment must reveal discriminatory animus and be made by a decision maker. Pruett v. Columbia House Co., No. 2:02 CV 00224 RLY WT, 2005 WL 941675, at *15 (S.D. Ind. March 31, 2005) (citing Balderston v. Fairbanks Morse Engine, 328 F.3d 309, 321 (7th Cir.2003)).

In the absence of direct evidence, the burden-shifting analysis for summary judgment in Title VII cases applies for claims brought under § 1981. See, e.g., McDonnell Corp. v. Green, 411 U.S. 792 (1973); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). In the first step of the inquiry, the plaintiff must establish the three prima facie elements of a §1981 claim outlined above. If the plaintiff makes out a prima facie claim, the defendant may assert reasons for its action that would not violate § 1981. Id. Plaintiff may then challenge any such reasons as

pretextual. Id.

Plaintiffs Johnny Robinson and minor Plaintiff J.R., as African-Americans, satisfy the first element of a prima facie claim under section 1981. Although Plaintiff Angela Robinson is Caucasian, the court will conclude, for purposes of this argument, that the Plaintiffs, as a biracial family unit, meet the first prong.

To satisfy the second prima facie element, Plaintiffs must allege facts which would establish that their suspension from the soccer program(s) was an act of intentional racial discrimination, or would support an inference to that effect. Ackaa v. Tommy Hilfiger Co., 1998 WL 136522, *3 (E.D. Pa.1998). The discriminatory intent necessary for a valid § 1981 claim can manifest in disparate impact, departure from procedural norms, a history of discriminatory conduct, or other relevant facts, but may not be established by conclusory allegations of generalized racial bias. Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992). Although they allege that the suspension was retaliation for Plaintiffs' voicing their objections to the remarks by Hicks, the suspension letter itself referenced numerous statements and/or actions by the Plaintiffs upon which their ban from the program was based. (Doc. 68-8). In such instances, Plaintiffs have not put forth evidence that the league had a history of banning other racial minorities or that the brash and unsportsmanlike behavior attributed to them

should not have resulted in suspension. It appears, therefore, that they are unable to meet the second prong of a prima facie case by demonstrating that the suspension was the result of intentional discrimination. As to the third element of a prima facie case, the Plaintiffs assert they are unable to engage in activities protected under §1981 such as making contracts to participate in these soccer programs. Accordingly, while they are able to demonstrate the first and third prongs, Plaintiffs cannot establish a prima facie case under §1981 because they cannot also satisfy the second prong.

Nonetheless, assuming, *arguendo*, that Plaintiffs were able to establish a prima facie case, the "burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's [adverse action]." Fuentes, 32 F.3d at 763 (quoting McDonnell Douglas, 411 U.S. at 802). "The [defendants] satisf[y their] burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable [] decision." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993)). Defendants "need not prove that the tendered reason actually motivated [their] behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the Plaintiff." Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253

(1981)).

In this action, Defendants have articulated legitimate, nondiscriminatory reasons for suspending the Plaintiffs–the conduct of the Plaintiffs both on and off the soccer field.[12]  They contend that the suspension was based on Plaintiff Angela Robinson's behavior which included, *inter alia*, violations including the use of profanity towards staff and children and calling one coach and the coach's daughter "whores," and other inappropriate remarks made about other members and staff of the soccer programs.

"Once the [defendant] answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production now rebounds to the plaintiff, who must now show by a preponderance of the evidence that the [defendant's] explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Id.  "[T]he plaintiff must convince the factfinder 'both that the reason was false, and that discrimination was the real reason.'" Id. (quoting Hicks, 509 U.S. at 515-516). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the [defendant's] proffered legitimate reasons must

_____

[12]  It is worth noting that nowhere in the pleadings is it alleged that the conduct of the minor Plaintiff J.R. played any role in the suspension of the Plaintiffs from the soccer program.  Rather, Defendants contend their actions are based solely on the behavior of her parents.

allow a factfinder to reasonably infer that . . . [the] proffered non-discriminatory reason[] was either a post-hoc fabrication or otherwise did not actually motivate the [adverse] action." Id. at 764 (internal citations omitted). "To discredit the [defendant's] proffered reason, however, the plaintiff cannot simply show that the [] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the [defendant]... [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. at 765 (internal citations omitted).

The Robinsons maintain that emails exchanged amongst the Defendants evidence a discriminatory animus to remove Plaintiffs from the league because of their race. Despite these contentions, the content of the emails reveal neither a racial tone nor a conspiracy to oust the Plaintiffs from the league. Moreover, given the fact that the league consisted of other minority members, it is difficult to conceive that the Defendants sought to expel Plaintiffs because of their race. Plaintiffs have not, therefore, demonstrated such "weaknesses or implausibilities . . . in the [Defendants'] proffered legitimate reason for its action that a reasonable factfinder could rationally determine it 'unworthy of credence,' and hence infer

23

'that the employer did not act for [the asserted] non-discriminatory reasons.'"

Fuentes at 765 (citations omitted).  Plaintiffs have not put forth any evidence to allow the finder of fact to conclude that but-for their exercise of free speech, the adverse action would not have occurred.  Indeed, regardless of their objection to the comment made by Hicks, it is difficult to imagine how Plaintiffs could have continued to participate in the league given not only their discontent but also the numerous instances of their disruptions to the program.  Accordingly, not only are Plaintiffs unable to establish a prima facie case under §1981, even if they could carry this burden, they have failed to establish that the Defendants' reasons for suspending them were a pretext for racial discrimination.  Consequently, it will be recommended that the Motions be granted on this claim and summary judgment be entered in favor of all Defendants thereon.

## (D) Qualified Immunity

Government officials, performing discretionary functions, are entitled to qualified immunity for their actions, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is an affirmative defense that the officer must raise.  *See* Siegert v. Gilley, 500 U.S. 226, 231 (1991).  Because the Supreme Court characterizes the issue of

qualified immunity as a question of law, <u>Elder v. Holloway</u>, 510 U.S. 510, 511 (1994), the resolution of immunity questions early in the proceedings is encouraged. <u>Saucier v. Katz</u>, 533 U.S. 194, 200-201 (2001); <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (per curiam).

There are two inquiries that a court must make in determining whether a defendant is entitled to qualified immunity. One is whether the facts as alleged in the complaint make out a violation of a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. at 201. The second question is whether "the right was clearly established . . . in light of the specific context of the case." <u>Id.</u> Qualified immunity serves as a shield from suit if a defendant official could have reasonably believed that the actions in question were lawful in light of clearly established law and the information the defendant possessed at the time. <u>Hunter v. Bryant</u>, 502 U.S. at 227 (quoting <u>Anderson</u>, 483 U.S. at 641). Officials who "reasonably but mistakenly" conclude that their actions were lawful are still entitled to immunity. <u>Id.</u> This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Id.</u> at 229 (citing <u>Malley v. Briggs</u>, 475 U.S. 335, 343 (1986)).

It is difficult to decipher what right Plaintiffs maintain was transgressed by the Defendants–their free speech rights in voicing their objection to the comment

made by Hicks or their right to pursue social pursuits as a family through their

participation in recreation sports programs.

### 1.    *Retaliation for Exercise of Free Speech*

To state a claim for actionable retaliation under the First Amendment, the

plaintiff must allege facts which, if proven, would establish that the plaintiff's

protected First Amendment activity was a "substantial or motivating factor in the

alleged retaliatory action." Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 829

(3d Cir. 1994).  The right to be free from retaliation for exercise of First

Amendment rights is clearly established.  *See* Crawford-El v. Britton, 523 U.S.

574, 592 (1998); Perry v. Sindermann, 408 U.S. 593, 597 (1972) ("For at least a

quarter-century, this Court has made clear that even though a person has no 'right'

to a valuable government benefit and even though the government may deny him

the benefit for any number of reasons, ... [i]t may not deny a benefit to a person on

a basis that infringes his constitutionally protected interests-especially his interest

in freedom of speech."); Anderson v. Davila, 125 F.3d 148, 160 (3d Cir.1997)

("The Supreme Court has explicitly held that an individual has a viable claim

against the government when he is able to prove that the government took action

against him in retaliation for his exercise of his First Amendment rights."). The

fact that the right is clearly established, however, does not end the qualified

immunity analysis in the First Amendment retaliation context. The Third Circuit

has described the inquiry in this context as follows:

> The qualified immunity analysis requires a determination as to
> whether reasonable officials could believe that their conduct was not
> unlawful even if it was in fact unlawful. In the context of a First
> Amendment retaliation claim, that determination turns on an inquiry
> into whether officials reasonably could believe that their motivations
> were proper even when their motivations were in fact retaliatory.

Larsen v. Senate of Com. of Pa., 154 F.3d 82, 94 (3d Cir. 1998) (internal citation

omitted).

Thus "the qualified immunity analysis in the context of a First Amendment

retaliation claim turns on 'factual determinations as to the officials' subjective

beliefs and motivations[.]'" Neuberger v. Gordon, 567 F. Supp. 2d 622, 642 (D.

Del. 2008) (quoting Larsen, 154 F.3d at 95). It therefore "cannot properly be

resolved on the face of the pleadings, but rather can be resolved only after the

plaintiff has had an opportunity to adduce evidence in support of the allegations

that the true motive for the conduct was retaliation." Larsen, 154 F.3d at 94. A

bare allegation of retaliatory motive, however, is not sufficient to defeat an

assertion of qualified immunity. Id. at 95. If "the legitimate basis for the actions

[is] so apparent that the plaintiff's allegations of retaliatory motive could not alter

the conclusion[,]" a defendant may be entitled to qualified immunity. Id.

In the present case, Defendants have put forth evidence showing the long history of dispute and disturbance to the soccer programs attributable to Plaintiffs Angela and Johnny Robinson. These ample bases for their suspension cannot be overcome by a naked claim attempting to couch their ban from the soccer program as a First Amendment retaliation claim. Asserting one's free speech rights will not invalidate an otherwise legitimate course of action. While Plaintiffs maintain that the Defendants course of conduct is "intuitively unreasonable," such claims amount only to bare allegations. (*See* Doc. 71, p. 33). Given the separate legitimate bases for the league's action, noted in the letter to Plaintiffs informing them of the suspension,[13] the suspension clearly would not be altered by Plaintiffs' allegation of retaliation for the exercise of their right to free speech. This is to say, based on the Plaintiffs poor conduct and disruptive behavior, the decision to suspend them would have been the same in the absence of the exercise of their First Amendment rights. Therefore, Defendants are entitled to qualified immunity on the First Amendment claim.

---

[13] The minutes of the September 26, 2007 HSC appeal hearing listed the no less than 10 incidents involving Plaintiffs between September, 2006 and July, 2007 which prompted the suspension. *See* Doc. 57-12. The decision of the EPYSA arbitration panel, to which Plaintiffs also appealed, also noted numerous instances of disruptive conduct by Plaintiffs. *See* Doc. 57-13.

## 2. *Right to Participate in Sports*

Plaintiffs also advocate against the application of qualified immunity by arguing that the Defendants have excluded the family from social pursuits by impairing their right to participate in the soccer program. However, courts have consistently found that there is no constitutional right to participate in interscholastic athletic programs. *See* Dziewa v. Pennsylvania Interscholastic Athletic Ass'n, Inc., No. 08-5792, 2009 WL 113419 (E.D. Pa. Jan. 16, 2009); Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3rd Cir.2004) ("There is no constitutionally protected right to play sports. Thus, the fact that the requirements regulate Megan's ability to play basketball is of no legal consequence"); Mifflin County School Dist. v. Monsell, 504 A.2d 1357 (Pa. Commw.1986) ("students do not have a property right in participating in interscholastic sports."); Dallam v. Cumberland Valley School Dist., 391 F. Supp. 358, 362 (M.D. Pa.1975) (upholding one-year bar for transfer student because "there exists no constitutionally protected property interest in competing for a place on a high school athletic team"). Therefore, the qualified immunity issue is resolved at step one of the inquiry: there is no constitutional violation. Reedy v. Evanson, 615 F.3d 197 (3d Cir. 2010) (if no constitutional right would have been violated were allegations established, there is no necessity for further inquiries concerning

qualified immunity.)

To the extent that Plaintiffs have stated a claim against the Defendants

Hicks, King and the City of Harrisburg, they are entitled to qualified immunity.[14]

Consequently, the Motion for Summary Judgment should be granted to the

Defendants on this issue as well.

*(E) Commerce Clause*

The Commerce Clause of the United States Constitution grants Congress the

authority to "regulate Commerce ... among the several States." U.S. CONST. ART.

1, § 8, cl. 3.  There are three broad categories of activity that Congress may

regulate under its commerce power: first, Congress may regulate the use of the

channels of interstate commerce; second, Congress is empowered to regulate and

protect the instrumentalities of interstate commerce, or persons or things in

interstate commerce, even though the threat may come only from intrastate

activities; and, finally, Congress' commerce authority includes the power to

regulate those activities having a substantial relation to interstate commerce, i.e.,

those activities that substantially affect interstate commerce.  Id.  This clause has

been interpreted as not only an affirmative grant of power to Congress, but also a

---

[14]  Having noted above that Defendants Bolognese and CPYSL are not state actors, the qualified immunity analysis is inapplicable to them.

limitation upon the states' ability to regulate, or impact, interstate commerce.

Oregon Waste Sys. v. Department of Envtl. Quality, 511 U.S. 93 (1994);

Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 462 F.3d 249, 261

(3d Cir.2006) (quoting Granholm v. Heald, 544 U.S. 460, 472 (2005)).

Further, Title II of the Civil Rights Act of 1964, provides in Section

2000a(a) that:

> All persons shall be entitled to the full and equal enjoyment of the
> goods, services, facilities, privileges, advantages, and
> accommodations of any place of public accommodation, as defined in
> this section, without discrimination or segregation on the ground of
> race, color, religion or national origin.

42 U.S.C. § 2000a *et seq.* The operations of a youth soccer club arguably

constitute "a place of exhibition or entertainment" so as to be included as a public

accommodation under Title II. 42 U.S.C. § 2000(b)(3). *See* U. S. v. Slidell Youth

Football Ass'n, 387 F. Supp. 474 (E. D. La. 1974) (holding that youth football

program constituted a public accommodation as a "source of entertainment" by

Title II); National Organization for Women v. Little League Baseball, Inc., 318

A.2d 33 (N.J. Super. 1974), *aff'd mem.*, 338 A.2d 198 (N.J. 1974) (holding Little

League to be a public accommodation). "The operations of an establishment

covered by section 2000a(b)(3) affect commerce if the establishment 'customarily

presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce.'" U.S. v. Lansdowne Swim Club, 713 F. Supp. 785, 790 (E.D. Pa.1989) (quoting id.).

To succeed on the merits of establishing a violation of the commerce Clause, the Plaintiffs must prove that Defendants engaged in a pattern or practice of discrimination against bi-racial families. 42 U.S.C. § 2000a-5(a).  Proof of a pattern or practice requires proof of disparate treatment, that is intentional discrimination, not simply disparate impact.  *See* International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 (1977).[15]   The words "pattern or practice" mean "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts.  It [must] establish by a preponderance of the evidence that racial discrimination was the [defendant's] standard operating procedure-the regular rather than the unusual practice." Teamsters, 431 U.S. at 336; *see also* Bazemore v. Friday, 478 U.S. 385, 398  (1986) (per curiam) (Brennan, J., writing for majority, concurring in part); Cooper v. Federal Reserve Bank, 467 U.S. 867, 875-76 (1984); Presseisen v. Swathmore College, 442 F.

---

[15]  Although Teamsters was an action brought by the government, the elements of proof are the same in a private class action suit.  *See* Cooper v. Federal Reserve Bank, 467 U.S. 867, 876 n. 9 (1984); Presseisen v. Swarthmore College, 442 F.Supp. 593, 599 (E.D. Pa.1977).

Supp. 593, 599 (E.D. Pa.1977). "[A] pattern or practice [is] present only where the denial of rights consists of something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized nature." 110 Cong. Rec. 14,270 (1964); *accord* id. at 14,239 (statement of Sen. Humphrey); id. at 15,895 (remarks of Cong. Celler); United States v. Ironworkers Local 86, 443 F.2d 544, 552 (9th Cir.1971), *cert. denied*, 404 U.S. 984; U.S. v. West Peachtree Tenth Corp., 437 F.2d 221, 227 (5th Cir. 1971).

A plaintiff's prima facie case may consist of "statistics alone ... or ... a cumulation of evidence, including statistics, patterns, practices, general policies, or specific instances of discrimination." EEOC v. American Nat'l Bank, 652 F.2d 1176, 1188 (4th Cir.1981), *cert. denied*, 459 U.S. 923 (1982); *see also* Croker v. Boeing Co., 662 F.2d 975, 991 (3d Cir.1981) (statistical evidence and individual testimony); Coates v. Johnson & Johnson, 756 F.2d 524, 532 (7th Cir.1985) (statistical evidence buttressed by evidence of general policies or specific instances of discrimination). Sporadic or isolated incidents of discrimination, however, are insufficient. *See* Goff v. Continental Oil Co., 678 F.2d 593, 596-97 (5th Cir.1982) (three instances of individual discrimination); Ste. Marie v. Eastern R.R. Ass'n, 650 F.2d 395, 406 (2d Cir.1981) ("While the definition of a pattern or practice is not capable of a precise mathematical formulation, ... more than two

acts will ordinarily be required.") (citing, *inter alia*, <u>Presseisen</u>, 442 F.Supp. at 608); *see also* <u>Croker</u>, 662 F.2d at 995 (plaintiff class proved no more than isolated or sporadic discriminatory acts).  If the plaintiff makes a prima facie showing, the defendant then has the burden to demonstrate that evidence by showing the proof is either inaccurate or insignificant, or to provide a nondiscriminatory explanation for the discriminatory result.  *See* <u>Teamsters</u>, 431 U.S. at 360; <u>Croker</u>, 662 F.2d at 991; <u>Coates</u>, 756 F.2d at 532 (citing, *inter alia*, <u>Dothard v. Rawlinson</u>, 433 U.S. 321 (1977)). The burden of persuasion remains at all times with the plaintiff.  *See* <u>EEOC v. Sears, Roebuck & Co.</u>, 839 F.2d 302, 309 (7th Cir.1988); <u>Croker</u>, 662 F.2d at 991.

In the present case, Plaintiffs aver that by failing to remedy the situation regarding the comment by Hicks, as Plaintiffs deemed proper, Defendants Hicks, King and the City of Harrisburg have tacitly endorsed the comment and, they argue, racial discrimination.[16]  Plaintiffs point out that the Supreme Court has noted "the grave and pernicious effect that racial discrimination has on interstate commerce." (*See* Doc. 69, p. 25).  They have, however, added no factual support to this bare claim.

---

[16] This issue is not raised between Plaintiffs and Defendants Bolognese and CPYSL.

Defendants contend that by alleging only a general effect that racial discrimination has on interstate commerce is insufficient to establish a violation of the Commerce Clause. They maintain that the Plaintiffs' failure to put forth facts to establish an act on the part of the Defendants that improperly effects interstate commerce entitles them to summary judgment on the claim. It seems clear that the soccer program is sufficiently engaged in interstate commerce to bring it under the scope of the Commerce Clause. However, even assuming that the comment by Hicks was a racial remark, this alone, without more, is insufficient to establish a violation of the Commerce Clause. The effect of such a comment on interstate commerce cannot be assumed but rather must be sufficiently and properly articulated through "statistics, patterns, practices, general policies, or specific instances of discrimination." American Nat'l Bank, *supra* at 1188. Moreover, as noted above, an isolated incident will not carry Plaintiffs' burden to establish a prima facie case. Having offered no other evidence of alleged racial discrimination aside from this one remark, Plaintiffs are unable to establish a claim under the Commerce Clause.[17] Consequently, summary judgment in favor of the Defendants Hicks, King and the City of Harrisburg is appropriate on this claim.

---

[17] Plaintiffs have put forth no evidence to support their allegations of other racial remarks made by Defendants.

*(F) Substantive Due Process*

As observed above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "(1) ... the conduct complained of was committed by a person acting under color of state law and (2) ... [that] the conduct deprived the complainant of rights secured under the Constitution or federal law." <u>Sameric Corp. v. City of Philadelphia</u>, 142 F.3d 582, 590 (3d Cir.1988). The parties apparently do not dispute that the Harrisburg Defendants Hicks and King, as a coach and employees of the City, were acting under color of state law. The question in this case, then, is whether Defendants violated any of Plaintiffs' rights secured under the Constitution or federal law. Plaintiffs assert that Defendants deprived them of their substantive due process rights and emphasize, moreover, that the basis of this claim is not J.R.'s right to participate in sports but the right to familial integrity free of interference.[18] (*See* Doc. 69, p.26). They contend that the comment made by Hicks, and his later direction that the players not repeat statements made at practices to their parents, constitutes an obstruction to their pursuit of a family relationship. (<u>Id.</u> at p. 27).

The United States Court of Appeals for the Third Circuit has recognized a

---

[18]  Indeed, the right to participate in sports programs is not constitutionally protected. *See* p. 24, *supra.*

liberty interest in familial integrity, described as "the constitutionally protected liberty interests that parents have in the custody, care and management of their children." Croft v. Westmoreland County Children & Youth Serv., 103 F.3d 1123, 1125 (3d Cir.1997), *see also* Santosky v. Kramer, 455 U.S. 745, 753 (1982). "The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." Croft, 103 F.3d at 1125.

"When executive action is at issue, a violation of the Fourteenth Amendment right to substantive due process may be shown by conduct that 'shocks the conscience.'" A.M. v. Luzerne County Juvenile Pet. Ctr., 372 F.3d 572, 579 (3d Cir.2004) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998)). "Negligent conduct is never egregious enough to shock the conscience, but conduct intended to injure most likely will rise to the level of conscience-shocking." A.M., 372 F.3d at 579 (citing Lewis, 523 U.S. at 849). "In between these two extremes is a middle range of conduct known as deliberate indifference, which may rise to the level of conscience-shocking in certain circumstances." A.M., 372 F.3d at 579 (citing Lewis, 523 U.S. at 849-50).

Instantly, while Plaintiffs have articulated a constitutionally-protected right to raise their family as they deem fit, they have failed to establish a constitutional

violation of this right. The alleged instruction by Hicks for players not to tell their parents what occurred in soccer cannot reasonably be viewed as conduct so egregious that it "shocks the conscience." *See* Koorn v. Lacey Twp., 78 Fed. Appx. 199, 204 (3d Cir. 2003) (allegedly racist remarks made by township officials connected with enactment of ordinance did not violate homeowners' substantive due process rights); Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 401 (3d Cir. 2000); *see also* Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622-24 (1st Cir. 2000) (police officers' oral threats and repeated harassment was not sufficiently egregious as to "shock the conscience"); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) (allegation that sheriff laughed at and threatened to hang a prisoner did not state a constitutional claim under § 1983); Shabazz v. Cole, 69 F.Supp.2d 177, 200 (D. Mass.1999) ("Without even a suggestion of physical injury, [state prison librarian's] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct."); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 719 (6th Cir.1996) (upholding summary judgment for a soccer coach who verbally abused a 14 year old female student and then slapped her across the face, finding that: "it is simply inconceivable that a single slap could shock the conscience. We do not quarrel with a suggestion that [coach's] actions were careless and unwise; but they

fall far short of 'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process.").

Any such statement made by Hicks directing the players not to relay the remarks made at soccer to their parents is insufficient, as a matter of law, to establish a breach of the right to familial integrity. Accordingly, summary judgment in favor of Defendants Hicks, King and the City of Harrisburg is appropriate on Plaintiffs' substantive due process claim.[19]

### (G) Conspiracy

Plaintiffs further allege a claim under §1983 by averring that the Defendants engaged in a civil conspiracy to deprive them of their civil rights under the First and Fourteenth Amendments. Although unclear, it appears that the Plaintiffs are alleging that Defendants acted in collusion to oust the Plaintiffs from th soccer program.

A plaintiff must plead two essential elements to state a §1983 claim: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010). To make a conspiracy

---

[19] It does not appear that a substantive due process claim is asserted against Defendants Bolognese and CPYSL. *See* footnote 11, *supra*.

claim under section 1983 a plaintiff must additionally establish the elements of a civil conspiracy.  Dice v. Johnson, 711 F. Supp. 2d 340, 357 (M.D. Pa.2010); Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir.1974) (relying on Pennsylvania civil conspiracy law to set forth the elements). "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Adams v. Teamsters Local 115, 214 Fed. Appx.167, 172 (3d Cir.2007) (nonprecedential) (quoting in part Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir.1979)) (quoted case and internal quotation marks omitted). "The agreement can be shown by direct or circumstantial evidence," Id.; *see also* Marulli v. Alloy, Nos. 04-2869 and 04-2874, 2006 WL 2772553, at *8 (D.N.J. Sept. 23, 2006).  A civil conspiracy claim cannot be based "solely on suspicion and speculation." Marulli, 2006 WL 2772553, at *8.

Plaintiffs point to email exchanged amongst the Defendants, arguing they show a unified intent to prevent them from participating in the soccer program. The emails do, at times, indicate a sense of frustration shared by the Defendants with respect to the Plaintiffs.  These exchanges do not, however, suggest

Defendants had a common goal, let alone establish a claim of civil conspiracy by evidencing a common scheme hatched by Defendants to deprive Plaintiffs of their rights by ousting them from the soccer program.  *See* Taylor v. JFC Staffing Associates, 690 F. Supp. 2d 357 (M.D. Pa. 2009).  Moreover, as noted above, the right to participate in sports programs is not constitutionally-protected

Plaintiffs have not alleged and cannot demonstrate an illegal act by Defendants or a lawful act committed by unlawful means.  Plaintiffs therefore have not established a civil conspiracy cause of action.  Accordingly, summary judgment should be granted in favor of all Defendants on this issue.

*(H) PHRA*

The PHRA concerns discrimination in employment and in public accommodations and reads in relevant part:

> The opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any public accommodation and of any housing accommodation and commercial property without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin, the use of a guide or support animal . . . is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act.

43 PA. CONS. STAT. § 953.  Claims brought pursuant to the PHRA must first be raised with the Pennsylvania Human relations Commission by filing an

administrative complaint within 180 days of the alleged discriminatory action. Failure to exhaust administrative remedies precludes a litigant from seeking subsequent judicial remedies. *See* <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 925 (3d Cir. 1997). In the instant matter, Plaintiffs have not produced evidence that they exhausted their administrative remedies by filing an administrative action with the PHRC.[20] Consequently, they have not established their right to relief under this statute. Summary judgment in favor of all Defendants is, therefore, recommended on this issue.

## *(I) Access to Courts*

The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. *See* <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 n.12 (2002). It is a well settled principle of law that in order to state a claim for a denial of the right of access to the courts, a plaintiff must also show actual injury. <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). This requires an allegation that plaintiff has lost the opportunity

---

[20] While acknowledging that they referenced this issue in the amended complaint, Plaintiffs appear to concede that they do not seek remedy of the present allegation under the PHRA and have failed to exhaust their administrative remedies thereunder.

to pursue a nonfrivolous or arguable underlying claim and that there is no other remedy available to him. *See* <u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir.2008); <u>Christopher</u>, *supra*.

Plaintiffs also attempt, without seeking a formal amendment to the pleadings, to add a cause of action against Defendants Bolognese and CPYSL asserting they interfered with their right of access to the courts. Specifically, Plaintiffs allege that the Defendants have frustrated their right to access the courts by withholding evidence which would have enabled them to establish their claims of racial discrimination and retaliation. Defendants contend, however, that the evidence, which consists of emails by the Defendants, has been turned over, that its impact in the matter is *de minimis* and that Plaintiffs have failed to show an actual injury to their ability to present a meritorious claim has been lost. The court agrees. The evidence upon which Plaintiffs base this cause of action does not provide the factual basis to establish claims of retaliation and racial discrimination that Plaintiffs purport them to demonstrate. Moreover, Plaintiffs have failed to allege a meritorious claim that they have been precluded from asserting based on the alleged delay in obtaining this evidence. Consequently, summary judgment in favor of defendants Bolognese and CPYSL should be granted on this claim.

*(J) Punitive Damages*

Finally, the parties dispute whether the punitive damages claim has been established. Having determined that Defendants' are entitled to summary judgment on all claims, this issue should be dismissed as moot.

## V. Recommendation

Based on the foregoing, it is respectfully recommended that Defendants' Motions for Summary Judgment (Docs. 53, 56) be granted.[21]


Date: December 2, 2010                     s/ William T. Prince
                                           William T. Prince
                                           United States Magistrate Judge

---

[21] Although it was determined that the Harrisburg Defendants were not entitled to summary judgment with respect to the First Amendment retaliation claim inasmuch as there exists genuine issues of material fact, because theses Defendants are entitled to qualified immunity with respect to such a surviving claim, summary judgment is appropriate.